## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARIANNY CELESTE LOPEZ; BROOKE JOHNSON a/k/a BROOKE TAYLOR; TARA LEIGH PATRICK a/k/a CARMEN ELECTRA; JOANNA KRUPA, and LAURIE YOUNG a/k/a LAURIE ROMEO, | : : : : : : |
| Plaintiffs, | : : |
| v. | : C.A. No. : |
| CONCHETTA, INC. d/b/a CLUB RISQUE PHILADELPHIA and CONNIE INNEZZELLI; TACONY 2008, INC. d/b/a CLUB RISQUE NORTHEAST and RONALD CRUDELE; 3025 3025 N.J.S., INC. d/b/a CLUB RISQUE BRISTOL and DANIEL J. DERITIS, | : : : : **COMPLAINT** : : (Jury Trial Demanded) : : |
| Defendants. | : |

Plaintiffs ARIANNY CELESTE LOPEZ; BROOKE JOHNSON a/k/a BROOKE TAYLOR; TARA LEIGH PATRICK a/k/a CARMEN ELECTRA; JOANNA KRUPA, and LAURIE YOUNG a/k/a LAURIE ROMEO (collectively, "Plaintiffs"), by and through their undersigned counsel, and for their Complaint ("Complaint") against Defendant CONCHETTA, INC. d/b/a CLUB RISQUE PHILADELPHIA and CONNIE INNEZZELLI; TACONY 2008, INC. d/b/a CLUB RISQUE NORTHEAST and RONALD CRUDELE; 3025 N.J.S., INC. d/b/a CLUB RISQUE BRISTOL and DANIEL J. DERITIS (collectively "Defendants") respectfully allege as follows:

### BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their three strip clubs,

Club Risqué located in Philadelphia and Bristol, Pennsylvania ("Risqué" or the "Clubs").

2.      As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of privacy as pertains to Defendants' appropriation of their likeness; c) violation of Pennsylvania's statutory right of publicity, 42 Pa. Cons. Stat. § 8316; d) violation of the Pennsylvania's Unfair Trade Practices Act and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1-201-9.2; e) defamation; and f) various common law torts, including conversion.

3.      In addition to the actual, punitive, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any Club, via any medium.

## JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 15 U.S.C. § 1125(a)(1), and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.      As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6.      According to publicly available records, Defendant CONCHETTA, INC.  is a corporation formed under the laws of the state of Pennsylvania, with its principal place of business located 1700 South Christopher Columbus Boulevard Philadelphia Pennsylvania 19148. CONCHETTA, INC. operates Club Risqué Philadelphia, which is located at 1700 South

Christopher Columbus Boulevard. Philadelphia Pennsylvania 19148.

7.      According to publicly available records, defendant TACONY 2008, INC. is a corporation formed under the laws of the state of Pennsylvania, with its principal place of business located at 5921 Tacony Street Philadelphia Pennsylvania 19135. TACONY 2008, INC. operates Club Risqué Northeast, which is located at 5921 Tacony Street Philadelphia Pennsylvania 19135.

8.      According to publicly available records, defendant 3025 N.J.S., INC. is a corporation formed under the laws of the state of Pennsylvania, with its principal place of business located at 3025 New Rodgers Road, Bristol, Pennsylvania 19007.   3025 N.J.S., INC. operates Club Risqué Bristol, which is located at 3025 Veterans Highway Bristol, Pennsylvania 19007.

9.      According to publicly available records, Defendant Connie Innezzelli is an individual operating under the laws of the state of Pennsylvania, who is an Owner and/or CEO of CONCHETTA INC.

10.     According to publicly available records, Defendant Ronald Crudele is an individual operating under the laws of the state of Pennsylvania, who is an Owner and/or CEO of TACONY 2008, INC.

11.     According to publicly available records, Defendant Daniel J. Deritis is an individual operating under the laws of the state of Pennsylvania, who is an Owner and/or CEO of 3025 N.J.S., INC.

12.     Venue is proper in the United States District Court for the First Judicial Court District of Pennsylvania because Philadelphia, Pennsylvania is Defendants' principal place of business.

13.     A significant portion of the alleged causes of action arose and accrued in Philadelphia, Pennsylvania and the center of gravity for a significant portion of all relevant events alleged in this Complaint is predominately located in Philadelphia, Pennsylvania.

## PARTIES

### Plaintiffs

14.     Plaintiff Arianny Celeste Lopez ("Lopez") is well-known professional mode, and a resident of Los Angeles County, California.

15.     Plaintiff Brooke Johnson a/k/a Brooke Taylor ("Taylor") is a well-known professional model, and a resident of Santa Barbara County, California.

16.     Plaintiff Tara Leigh Patrick a/k/a Carmen Electra ("Electra") is a well-known professional model, and a resident of Los Angeles County, California.

17.     Plaintiff Joanna Krupa ("Krupa") is a well-known professional model, and a resident of Miami-Dade County, Florida.

18.     Plaintiff Laurie Young a/k/a Laurie Romeo ("Young") is a well-known professional model, and a resident of Orange County, California.

### Defendants

19.     According to publicly available records, defendant CONCHETTA, INC. is formed under the laws of the state of Pennsylvania.  During times relevant to this action, CONCHETTA, INC. operated Club Risqué Philadelphia in Philadelphia, Pennsylvania.

20.     According to publicly available records, defendant TACONY 2008, INC. is formed under the laws of the state of Pennsylvania.  During times relevant to this action, TACONY 2008, INC. operated Club Risqué Northeast in Philadelphia, Pennsylvania.

21.     According to publicly available records, defendant 3025 N.J.S., INC. is formed

under the laws of the state of Pennsylvania.  During times relevant to this action, 3025 N.J.S.,

INC. operated Club Risqué Bristol in Bristol, Pennsylvania.

## **FACTUAL ALLEGATIONS**

22.     As set forth immediately below, each Plaintiff is a well-known professional model

who earns her livelihood modeling and licensing her Images to companies, magazines, and

individuals for the purpose of advertising products and services.

23.     Plaintiffs' careers in the modeling industry place a high degree of value on their

good will and reputation, which is critical in order to maximize their earning potential, book

modeling contracts, and establish each of their individual brands.  In furtherance of establishing,

and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and

brands, for which they model.

24.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by

one or more of the Defendants in order to make it appear that they worked at, endorsed or were

otherwise associated or affiliated with Club Risqué.

25.     In the case of every Plaintiff, such appearance was false.

26.     Moreover, in every case this misappropriation occurred without any Plaintiff's

knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration

for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal

use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

27.     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas

(or their licensees') because the Images they misappropriated came from Plaintiffs' own social

media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base,

and build and maintain her brand.

*Plaintiffs' Backgrounds and Careers*

28.     Lopez is an American model, businesswoman and celebrity. Lopez is recognized as one of the most consistent and most popular personalities of the UFC where she has worked as an Octagon Girl since 2006. Lopez is the Co-Host of the popular Velocity TV show, Overhaulin'. She is adored around the world for her exotic beauty and great relationship with her fans. Lopez booked her first modeling job when she was just four months old. She excelled in cheer, dance and gymnastics before attending the University of Nevada Las Vegas (UNLV) to purse a degree in Fitness Management and Nutrition. Fluent in Spanish, Lopez has quickly become one of the most sought-after talents in the modeling world and has appeared on the covers of some of the world's most foremost magazines including, Playboy, Maxim US, FHM, Maxim Korea, Maxim Philippines, FHM Australia and UFC Magazine. In addition to modeling, Lopez has hosted television shows, appeared in short films and recorded some original music. Ms. Celeste is in an elite class of Social Media influencers with over 3.2 million Instagram followers, over 703 thousand Twitter followers and an incredible 6 million fans on Facebook combined with her own personal website.

29.     That we know of, Lopez is depicted in advertising to promote the Clubs on its Facebook page. This Image was intentionally altered to make it appear that Lopez was either a stripper working at Club Risqué, that she endorsed the Clubs, or that she was otherwise associated or affiliated with the Clubs.

30.     Lopez has never been employed at Club Risqué, has never been hired to endorse the Clubs, has never been otherwise associated or affiliated with the Clubs, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

31.     Taylor is a world-renowned model who has appeared in magazines such as FHM, Maxim, Viva Glam, and Stuff. She has also appeared in commercials and billboards such as Fredrick's of Hollywood, Coors Light, and Budweiser. In addition, Taylor has also been featured in countless other catalogs, billboards, television commercials and shows.

32.     That we know of, Taylor is depicted in advertising to promote the Clubs on its Facebook page. This Image was intentionally altered to make it appear that Taylor was either a stripper working at Club Risqué, that she endorsed the Clubs, or that she was otherwise associated or affiliated with the Clubs.

33.     Taylor has never been employed at Club Risqué, has never been hired to endorse the Clubs, has never been otherwise associated or affiliated with the Clubs, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

34.     Electra is an actress, recording artist, and entrepreneur. With an impressive body of work that encompasses dance, television, film, comedy and theatre, Carmen Electra has quickly emerged as one of Hollywood's most versatile personalities. Growing up, Electra attended Cincinnati's School for Creative and Performing Arts. She always knew she was destined to be an entertainer. It was after graduating high school in 1991 that Electra moved to the City of Angels and caught the eye of Prince, who would go on to produce her self-titled album on his Paisley Park record label. Electra ultimately ventured into acting with regular roles on Baywatch and the MTV's Singled Out. Electra has since made the move to the big screen with starring roles in blockbuster hits including Scary Movie, Dirty Love, Cheaper by the Dozen 2, and Meet the Spartans. Electra won the role as the face of MAX Factor following in the famous footsteps of Marilyn Monroe and Jaclyn Smith. Electrifying, intoxicating and firmly in control,

for two years Electra brought the high-glam attitude of the MAX Factor line to life with style and sensuality. In 2006, Electra became a published author with the release of her book, "How to be Sexy." She also formed a dance troupe, The Bombshells, who perform nationwide, and she recently released the fitness DVD series, Carmen Electra's Aerobic Striptease. In 2009, Electra appeared live on stage in MGM Grand Vegas' Crazy Horse Burlesque Show to sold-out audiences during the summer and fall of the year. In 2010, Carmen starred in the film, Oy Vey, My Son is Gay. Most recently, Electra starred in the film 2-Headed Shark Attack, alongside Charlie O'Connell, served as a guest judge on Britain's Got Talent, and made reoccurring guest appearances on CW's hit show, 90210. In November of 2012, Electra released her return-to-music single, "I Like it Loud," featuring Grammy-nominated producer Bill Hamel. The single, which delves into Electra's fun and playful side, marks 20 years since she first busted onto the Hollywood circuit as a pop artist discovered by music legend Prince. "I Like It Loud" hit the #25 spot on Billboard's Dance Club Play Chart and from there, the sultry songstress was on fire, turning up the heat for audiences everywhere, including The Wendy Williams Show, Cyndi Lauper's Home For The Holidays charity event, the notorious White Part in Palm Springs, and most recently, Life Ball in Vienna. In June of 2014, Electra released 'Werq', which was followed by the release of a music video. This club anthem is all about woman empowerment and the dynamic music video embodied that vision. Now, the electrifying vixen is back with her hottest single yet, 'Around The World'. As a "Thank You" to her global supporters. Carmen released the energizing track in November. The single invites her fans from all corners of the globe to join her and get lost in her music. She will be releasing more music and touring America in 2015. Electra partnered with Fleshlight to create her own line of personal lubricants geared towards women in August of 2015. In November 2015, Electra performed a few of her hits in Russia at

the "Favourites of the Moon" festival. During that same month, Electra launched her new

perfume, "Carmen Electra", with FragranceNet. Electra can most recently be seen as the host of

WEtv's new reality docuseries "Ex Isle" which premiered January 8th, 2016. She has well over 3

million Facebook, Instagram, and Twitter followers.

35.   That we know of, Electra is depicted in advertising to promote the Clubs on its

Facebook page. This Image was intentionally altered to make it appear that Electra was either a

stripper working at Club Risqué, that she endorsed the Clubs, or that she was otherwise

associated or affiliated with the Clubs.

36.   Electra has never been employed at the Club Risqué, has never been hired to

endorse the Clubs, has never been otherwise associated or affiliated with the Clubs, has received

no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will

continue to suffer, damages as a result of same.

37.   Krupa is a model, actress, and dancer. She has appeared on magazine covers

including Personal, Steppin' Out, Envy, Shape, FHM, Stuff, Inside Sport, Teeze, and Maxim.

Ms. Krupa was named the "Sexiest Swimsuit Model in the World" and Maxim ranked her #55 in

its "2011 Hot 100". In 2004-2005, she was voted German's Maxim Model of the year. Ms.

Krupa also models for ads with PETA and has appeared twice on the Playboy magazine cover. In

addition, Ms. Krupa has appeared in the action film "Max Havoc: Curse of the Dragon," as well

as the television show "Superstars" in June of 2009 and on Season 9 of "Dancing with the Stars."

She is currently the head judge of Poland's "Next Top Model" since fall of 2010, and is a cast

member for the reality TV show "The Real Housewives of Miami."

38.   That we know of, Krupa is depicted in advertising to promote the Clubs on its

Instagram page. This Image was intentionally altered to make it appear that Krupa was either a

stripper working at the Club Risqué, that she endorsed the Clubs, or that she was otherwise associated or affiliated with the Clubs.

39.     Krupa has never been employed at Club Risqué, has never been hired to endorse the Clubs, has never been otherwise associated or affiliated with the Clubs, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

40.     Young may not be "the girl next door" but she is certainly the all California, bikini wearing, sun worshipping, beach girl. Young has been a cheerleader since the age of seven and continued through High School to competition and coaching juniors. Young's modeling and acting career has been achieved by natural growth and development from being offered continual work while being on the beach or cheerleading. Young has contract work with Shirley's of Hollywood, is an ambassador and cheerleader for the NHRA drag racing series, shot the cover and is the 2015 Kandy Magazine model of the year and has done several TV commercials. Her most famous one being the late-night spokeswoman for Adam and Eve products that has become a bit of a cult favorite.

41.     That we know of, Young is depicted in advertising to promote the Clubs on its Facebook page. This Image was intentionally altered to make it appear that Young was either a stripper working at Club Risqué, that she endorsed the Clubs, or that she was otherwise associated or affiliated with the Clubs.

42.     Young has never been employed at Club Risqué, has never been hired to endorse the Clubs, has never been otherwise associated or affiliated with the Clubs, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

*Defendants' Business*

43.     Upon information and belief, both Defendants operated, during the relevant time period, Club Risqué, where they engaged in the business of selling alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

44.     Upon information and belief, and in furtherance of its promotion their promotion of Club Risqué, Defendants' own, operate and control Club Risqué's social media accounts, including its Facebook, Twitter, and Instagram accounts.

45.     Defendants used Club Risqué's Facebook, Twitter, and Instagram accounts to promote Club Risqué, and to attract patrons thereto.

46.     Defendants did this for their own commercial and financial benefit.

47.     Defendants have used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that each Plaintiff either worked as a stripper working at Club Risqué, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

48.     Defendants used Plaintiffs' Images and created the false impression that they worked at or endorsed Club Risqué to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

49.     As Defendants were at all times aware, at no point have any of the above named Plaintiffs ever been affiliated with or employed by Club Risqué and at no point have any of the Plaintiffs ever endorsed Club Risqué, or otherwise been affiliated or associated with Club Risqué.

50.     All of Defendants' activities, including their misappropriation of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Defendants did not compensate Plaintiffs for their use of their Images.

51.     As such, Plaintiffs have never received any benefit from Defendants' use of their Images.

**Standard Business Practices in the Modeling Industry**

52.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

53.     The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (e.g., company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

**Defendant's Misappropriation of Plaintiffs' Images**

54.     As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote Club Risqué by and through various marketing and promotional mediums including, without limitation, Club Risqué website, Twitter, Facebook, and Instagram.

55.     Defendants showcased Plaintiffs' Images on Club Risqué's social media pages to create the false impression that Plaintiffs worked at Club Risqué endorsed, promoted or

sponsored same, or were otherwise associated or affiliated with same.

56.     Defendants did so to attract clientele to Club Risqué, promote Club Risqué, and thereby generate revenue for Defendants.

57.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed Club Risqué.

58.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

59.     In addition, Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.

60.     This is especially so insofar as each of Plaintiffs' Images have been associated with a strip club, and the implication of Defendants' use of Plaintiffs' Images is that they are strippers, endorse a strip club, or are otherwise associated or affiliated with a strip club.

61.     At no point were any of the Plaintiffs ever affiliated with Club Risqué, or Defendants.

62.     Each of Plaintiffs' Images was used without her consent.

63.     At no point was any Plaintiff ever contacted by any Defendants, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

64.     Neither Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

65.     Neither Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Club Risqué website, Twitter, Facebook, or Instagram accounts.

66.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

67.     Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

**FIRST CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(B): False Advertising)**

68.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

69.     The provisions of the Lanham Act, 15 U.S.C. §1125, et seq. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

70.     As set forth hereon, each advertisement at issue in this action were false and misleading because no Plaintiff ever worked at Club Risqué, or agreed to appear in Club Risqué's advertisements.

71.     Given the false and misleading nature of the advertisements, Defendants had the capacity to deceive consumers and, upon information and belief, did so deceive consumers.

72.     Upon information and belief, said deceptive advertisements had a material effect on the purchasing decisions of consumers who attended Club Risqué.

73.     Insofar as Defendants' published these false and misleading advertisements on the internet, they had the capacity to affect interstate commerce, and, upon information and belief, did so affect interstate commerce.

74.     Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed the Club, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with the Club.

- 14 -

75.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at the Club.

76.     Upon information and belief, Defendants' use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of the Club, and the goods and services provided by the Club.

77.     Due to Defendants' unauthorized use of Plaintiffs' Images in order to create a false advertisement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### SECOND CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A): False Association)

78.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

79.     The provisions of the Lanham Act, 15 U.S.C. §1125, et seq. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

80.     Defendants used Plaintiffs Images in order, inter alia, to create the false impression with the public that Plaintiffs were affiliated, connected, or associated with Club Risqué, or worked at, sponsored, or approved of Club Risqué goods, services or commercial activities.

81.     This was done to promote and attract clientele to Club Risqué, and thereby generate revenue for the Defendants.

82.     Thus, this was done in furtherance of Defendants' commercial benefit.

83.     Despite the fact that Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with Club Risqué, nor worked at, sponsored, or approved of Club Risqué's goods, services or commercial activities, Defendants nevertheless

used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with Club Risqué.

84.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association and/or employment at the Club.

85.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of the Club, and the goods and services provided by the Club.

86.     Due to Defendants' unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## THIRD CAUSE OF ACTION
### (Right of Privacy)

87.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

88.     As set forth hereon, Defendants have violated each Plaintiff's common law right to privacy under Pennsylvania law.

89.     Defendants have done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

90.      Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on Club Risqué's website or related social media accounts as part of Defendant's advertising campaign.

91.     At all relevant times, Club Risqué's website and social media accounts were used and operated by Defendants for advertising and trade purposes.

92.     Club Risqué's website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

93.     Plaintiffs are informed and believe and hereon allege that Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

94.     Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

95.     Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiffs' images and likenesses was altered so as to reach a new audience and/or promote a different product.

96.     Upon information and belief, Defendants' use of Plaintiffs' Images did in fact attract clientele and generate business for Club Risqué.

97.     At no point did any or either Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

98.     Defendants were at all relevant times aware that they never received any of the Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

99.     At no point did Defendants ever compensate Plaintiffs for their use of the Images.

100.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

## **FOURTH CAUSE OF ACTION**
### **(Right of Publicity, Unauthorized Use of Name or Likeness: 42 Pa. Cons. Stat. § 8316)**

101.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

102.    As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

103.    Said commercial interest was developed by each Plaintiff through her investment of time, effort and money in her career, image, persona and likeness.

104.    As set forth herein, Defendants used each Plaintiff's image and likeness for commercial purposes by using same in Club Risqué advertising.

105.    Defendants did so without any Plaintiff's consent, written or otherwise.

106.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

107.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiffs' images and likenesses was altered so as to reach a new audience and/or promote a different product.

108.    Defendants were at all relevant times aware that they never received any of the Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

109.    At no point did Defendants ever compensate Plaintiffs for their  use of their Images.

110.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

## FIFTH CAUSE OF ACTION
### (Common Law Right of Publicity)

111.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

112.    As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

113.    Said commercial interest was developed by each Plaintiff through her investment of time, effort and money in her career, image, persona and likeness.

114.    As set forth herein, Defendants used each of the Plaintiffs' images and likenesses for commercial purposes by using same in Club Risqué advertising.

115.    Defendants did so without any of the Plaintiff's consent, written or otherwise.

116.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants republicized Plaintiffs' images and likenesses on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

117.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

118.    Defendants were at all relevant times aware that they never received any of the Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

119.    At no point did Defendants ever compensate any of the Plaintiffs for their use of their Images.

120.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

## SIXTH CAUSE OF ACTION
### (Defamation)

121.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

122.    As detailed throughout this Complaint, Defendants have published altered Images of Plaintiffs in order to promote their Club to the general public and potential clientele.

123.    Defendants' publication of said Images constitutes a representation that Plaintiffs was either employed by the Club, that they endorsed the Club, or that they had some affiliation with the Club.

124.    None of these representations were true.

125.    In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were strippers working at the Club, or endorsed the Club.

126.    Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

127.    In the alternative, Defendants published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

128.    Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

129.    Defendants' publication of Plaintiffs' Images constitutes defamation under Pennsylvania law because said publication falsely accuses each Plaintiff of having acted in a manner – i.e., working as a stripper and/or endorsing a strip club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

130.    Defendant's publication of Plaintiffs' Images likewise constitutes defamation per se under Pennsylvania law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

131.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendants' publication of the Images support.

132.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation per se under Pennsylvania law because, insofar as said publication falsely portrays each of the

Plaintiffs as a stripper, it imputes unchastity to her.

133.    Defendants' publication of Plaintiffs' Images caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SEVENTH CAUSE OF ACTION

**(Negligence and *Respondeat Superior*)**Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

135.    Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and non-consensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

136.    Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

137.    Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

138.    Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

139.    Defendants breached their duty of care to both Plaintiffs and consumers by failing

to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

140.    Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Pennsylvania law, were not violated.  Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

141.    Defendants' breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

142.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

<u>**EIGHTH CAUSE OF ACTION**</u>
**(Conversion)**

143.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

144.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

145.    By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

146.    As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

<u>**NINTH CAUSE OF ACTION**</u>
**(Unjust Enrichment)**

147.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

148.    As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Clubs to the general public and potential clientele.

149.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either strippers working at the Clubs, or endorsed the Clubs.

150.    Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

151.    Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

152.    Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Images because said publication has assisted Defendants in attracting clientele to their Clubs.

153.    Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

154.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### (Quantum Meruit)

155.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

156.    Plaintiffs are each internationally known models who earn their livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

157.    Companies and brands that choose to hire Plaintiffs compensate them for their

appearances.

158.    Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, endorse their Club, or are otherwise affiliated with their Club, Defendants have not compensated Plaintiffs.

159.    Plaintiffs are therefore entitled to reasonable compensation for the Clubs' unauthorized use of their Images.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiffs demand a trial by jury.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a)  For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through eleventh causes of action;

(b)  For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Club;

(c)  For punitive damages, in an amount to be determined at trial, pursuant to CUPTA 42-110g(a);

(d)  For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117; and

(e)  For such other and further relief as the Court may deem just and proper.

<div style="float:right">

_/s/ Gerald B. Baldino, III_
Gerald B. Baldino, III, Esquire
Attorney I.D. No. 326111
SACCHETTA & BALDINO
308 East Second Street
Media, PA 19063
P: (610) 891-9212
F: (610) 891-7190
gbaldino@sbattorney.com
_Attorney for Plaintiffs_

</div>

OF COUNSEL:
John V. Golaszewski, Esquire*
THE CASAS LAW FIRM, PC
1740 Broadway, 15ᵗʰ Floor
New York, New York
T: 646-872-3178
F: 855.220.9626
john@talentrights.law

Dated: December 18, 2023

*Pro Hac Vice Application Forthcoming*